SAYLES & BASSETTS v. C. H. TAYLOR AND OTHERS.

36  307
88  437

In October, 1855, E. & Co. obtained judgment against one H., and in March, 1857, also recovered judgment against the sheriff and his sureties for failure to return execution issued on the judgment against H. Execution having issued against the sheriff and his sureties, the sureties paid the amount of it to the attorneys of E. & Co., and the attorneys paid the same over to E. & Co., less fees. Afterwards, in 1860, the attorneys collected from H. the original judgment against him, and paid the proceeds to their clients, E. & Co., less fees. The present suit was brought by the sureties of the sheriff, to recover from the attorneys and E. & Co. the amount collected by the attorneys from H. It does not appear that the plaintiffs had made any demand of the defendants before the suit was brought. *Held,* that by the. plaintiffs' payment to the attorneys of the amount recovered against them as sureties of the sheriff, although Article 4787 of Paschal's Digest had not then been enacted, they were subrogated to the rights of E. & Co. against H., and are therefore entitled to recover from the attorneys the amount collected by them from H.; and the attorneys cannot be exonerated on the ground that their clients alone were responsible to the plaintiffs, because the maxim *respondeat superior* is not applicable. *Held, further,* that though it was not necessary to join E. & Co. as co-defendants with their attorneys, yet the latter cannot complain that this was done, or that judgment was rendered against their clients as well as themselves.

APPEAL from Washington. Tried below before the Hon. I. B. McFarland.

The opinion and head-note exhibit the facts of the case, which was submitted to the court below on an agreed statement.

The judgment below was against the appellants and C. Ennis, surviving partner of Ennis & Co.; but Ennis did not join in the appeal.

*Sayles & Bassetts*, for the appellants. The appellants insist, that upon this agreed case, judgment should have been rendered for the defendants in the court below.

The statute under which the judgment was rendered against the sheriff, reads as follows: "If any sheriff, or other officer, " shall fail to make return of any execution received by him " *    *    * he shall be liable to pay to the plaintiff " in execution the full amount of the debt, interests, and costs, " to be recovered against such sheriff and his sureties by " motion." (Paschal's Digest, 3796.) Were the sheriff and his sureties, upon the payment of the judgment rendered against them upon the motion for failure to return the execution, subrogated to the rights of the plaintiff in the original judgment, and entitled to collect the same? By a statute passed February 5th, 1858 (Paschal's Digest, 4787), if a sheriff has been compelled to pay a judgment against another party, the judgment remains in force for his use, and he is entitled to execution thereon. In the present case the execution was paid the plaintiffs on the 24th of August, 1857, before the passage of this act, and the rights of the parties are to be determined by the common law which was then in force. It is a general rule of law, that one person cannot voluntarily make another his debtor without his consent; or, in other words, if one who is not compelled, pays the debt of another, the law does not imply a promise upon the part of the latter to reimburse him. (Story on Contracts, Section 473-4.) That the sheriff, by his own default and neglect, was compelled to pay the judg-

ment against Heiskell, gave him no greater rights than if he had voluntarily paid it, and it has been accordingly so held in a case more favorable for the plaintiff than the case at bar.    But in Bigelow *v.* Provost, 5 Hill, 566, a *fi. fa.* was issued and delivered to the deputy-sheriff.    The sheriff was afterwards attached for not returning the writ, and the deputy-sheriff thereupon paid the amount of the judgment, taking an assignment of it from the plaintiffs by way of indemnity.    The defendant promised to pay the deputy-sheriff the moneys disbursed by him, but failed to do so; whereupon the deputy-sheriff caused a second *fi. fa.* to be issued.    On a motion to set aside the *fi. fa.* it was held, " that it was the duty of the deputy to " proceed with the execution of the *fi. fa.* according to its " exigencies.    This he neglected to do till his principal was " attached and compelled to pay the money.    Instead of this " being done directly, the deputy paid, and took an assignment " of the judgment against himself.    To this the defendants had " no objection.    They rather appear to have countenanced the " transaction, and to have incurred a moral obligation, which " one is sorry to see violated.    There are, however, principles " of policy involved in the case, which forbid the execution to " be enforced at law.    In the first place, it would tend little to " the prompt execution of a sheriff's duty if we should en- " courage him to delay, by holding out the hope that he may " save himself through any expedient.    It is but another name " for encouragement to violate his duty; and cases of abstract " morality will soon be invoked as a precedent for the most " flagrant instance of misconduct."    The act was called by an- other name—" that of purchase and assignment—a thing in " which no plaintiff will refuse to be a party, if the sheriff will " pay the money.    It does not change the real character of the " transaction."

In Reed *v.* Pruyn & Staats, 7 John., 426, it was held, that a sheriff cannot with his own money pay the plaintiff on an execution, and afterwards levy the execution out of the property of the defendants; nor can he take a bond or other security, and

detain the execution in his hands, and use it afterwards to en-
force the payment of the money advanced by him. The law in ·
force at the time of the judgment against the sheriff, and the
payment of the money by his securities, not having given him
the right to use the original judgment to indemnify him against
the consequences of his own neglect, neither he nor they are
entitled to recover from Ennis & Co. the money paid
them by the defendant Heiskell. With the policy of the
law of 1858 we have nothing to do. It was not in force at
the time the rights of the parties accrued, and cannot be in-
voked in their aid.

Again, if the plaintiffs, the securities of Irvin, the sheriff,
were entitled to the money paid by Heiskell, a demand
should have been shown. Until demand the defendants
would not have known to whom to pay, whether to the sheriff,
or to his securities, or to one of them, who, by the pleadings in
this case, seems to have alone paid the judgment. If the plaintiffs
are entitled to a judgment in this suit, it is on the ground that
the defendants received it as their agent, and an agent is not
liable to an action for money received until demand is made, or
some breach of trust or duty committed. (Walrath v. Thomp-
son, 6 Hill, 540.) In the present case the suit is brought for
the use of C. H. Taylor, and in rendering judgment it is ren-
dered in his favor alone. An assignee cannot maintain an action
to recover moneys received to the use of his assignor, without
notice and demand. (Sears Patrick, 23 Wend., 528.)

. Should the court hold that the plaintiffs in the court below
are entitled to the proceeds of the judgment in favor of Ennis
& Co. against Heiskell, the appellants insist that they have no
right of action against Sayles & Bassetts, the attorneys of Ennis
& Co., nor in this suit against the defendant Ennis. The
money paid by Heiskell was by virtue of an execution in favor
of Ennis & Co. against him, received by Sayles & Bassetts, their
attorneys, and was by them immediately paid over to Ennis &
Co., less ten per cent., the usual fee for collecting. Whether
or not Ennis & Co. had the right to collect this money on the

execution issued upon the judgment in their favor, or whether Ennis & Co. should hold this money in trust for the use of the sheriff's securities, is immaterial, so far as the rights and liabilities of their attorneys are concerned. If money be delivered to a servant, or clerk, or agent, to be paid over to a third person, being his principal, no action for money had and received, to recover it back, can be sustained against the former, but the principal only can be sued. (1 Chit., p. 387.) " If money be paid over to a known agent for the use of his " principal, an action for money had and received cannot be " maintained against him, but must be brought against the " principal, the agent being only responsible for breach of his " actual authority to his principal. But if the payment to the " agent be utterly void, so that he is not accountable to his " principal, he will be liable to the parties paying him, unless " he has actually paid over the money to his principal. Thus, " if money be paid by mistake to an agent, he will be liable " to a personal action therefor, so long as it remains in his hands, " although his principal be credited therefor on account for- " warded to him. But if the money be actually paid over to the " principal, the agent will not be liable, unless he be guilty " of fraud or of improper conduct. But this rule only applies " to cases when money is paid to an agent by a third person, for " the use of the principal, and when money is paid to the agent " by the principal for the use of a third person, no action · " lies against the agent by such third person, but only the " principal." (Story on Contracts, Section 173.)

In an action to recover back money paid by mistake, it appeared that the defendant, as attorney of Mrs. Wright, received one thousand dollars in compromise of her claim of dower, of which he paid eight hundred dollars to her and retained two hundred dollars as fees. It was alleged that Mrs. Wright had previously released her dower to parties under whom plaintiff claimed, and that the money had been paid under a mistake, and an action was brought against the attorney for the amount retained by him. Admitting the liability of Mrs. Wright, it

was held by the court, quoting the language of Lord Mansfield in Buller *v.* Harrison, 1 Cowp., 566 : " In general the principle " of law is clear, that if money be mispaid to an agent express- " ly for the use of his principal, and the agent has paid it over, " he is not liable in an action by the person who mispaid it." And it was held, that the retaining of the two hundred dollars as a fee, was a virtual payment—that the rights of parties do not depend upon idle and unnecessary ceremonies—and that the payment by retaining the money in satisfaction of fees due, was as effectual as if the money had been paid over to the client and then paid back.

The defendants, Sayles & Bassetts, acted in this matter only as the attorneys of their clients, in collecting money on an execution in favor of their clients against a third party—the money collected, less the usual fee of ten per cent., was paid over to the clients, and at no time, before suit brought, was any demand made upon them by the plaintiffs. Under the rules governing the law of principals and agents, and the responsibilities of the latter to third persons, the maxim *respondeat superior* applies. If an action will not lie against an attorney, for money collected and paid over to his client, by the party who paid it, still less will a third person, between whom and the attorney there is no privity, be entitled to an action. If any one is responsible to the plaintiff, the defendant Ennis is alone responsible.

But it is insisted that he is not responsible in this action. It is shown by the pleadings and agreed case, that at the time suit was brought, in the District Court of Washington county, the defendants Sayles & Bassetts resided in that county, and the defendant Ennis in Harris county. Sayles & Bassetts excepted to the petition on the ground that no cause of action was shown against them. Ennis excepted on the ground that no cause of action was shown against Sayles & Bassetts, and that the court had no jurisdiction of the suit against him, he being a resident of another county. " The law invests the defendant with the " right of being sued in the county of his own domicile. The

" privilege granted was intended as a substantial benefit, not to
" be disregarded unless on exceptions indicated by law, and
" which must have facts for their foundation. But the protec-
" tion, supposed to be guaranteed to a defendant, would be a
" mere delusion, if it could be evaded by the creation of a ficti-
" tious being, giving to it a local habitation (or as in this case,
" by joining parties against whom there is no right of action),
" and drawing the party defendant to its pretended domicile."
(Henderson v. Kissam, 8 Texas, 46.) In Pool v. Prickett, 8
Texas, 122, it was held, that a party cannot be deprived of the
privilege of being sued in the county of his domicile, by the
joinder of a person who resides in the county where the suit is
brought as a co-defendant, unless such joinder be *bona fide*, and
not merely for the purpose of giving the court jurisdiction.
(Raymond v. Holmes, 11 Texas, 54.)

*J. D. & D. C. Giddings*, for the appellees, cited Sublett v.
McKinney, 19 Texas, 443, and Hamilton v. Ward, 4 Texas, 356.

WALKER, J. The appellants in this case were attorneys for
Ennis & Co. They obtained a judgment against Heiskell in
the District Court of Washington county. Heiskell resided in
Fayette county. Ennis & Co., by their attorneys placed in the
hands of Irvin, the sheriff of Fayette county, an execution
sued out upon their judgment against Heiskell.

Irvin, by official negligence in not returning the execution
at the proper time, became liable to Ennis & Co. for the judg-
ment and costs, and on motion in the District Court of Fayette
county, judgment was rendered against him and his securities.
And the securities, the appellees in this case, paid the debt to
Sayles & Bassetts, the attorneys of Ennis & Co., they retaining
fifty per cent. of the amount for professional services in the
two cases.

Afterwards another execution was sued out against Heiskell,
and placed under the control of one Gould, an attorney. Heis-
kell paid the entire judgment to Gould, who, retaining twenty-

five dollars for his services, paid the remainder to Sayles & Bassetts, who, retaining ten per cent. as an additional fee, paid the balance of the money to their clients, Ennis & Co.

Although these transactions occurred prior to the Act of February 5th, 1858, the securities of Irvin, after having paid the debt of Ennis & Co., were entitled to be subrogated to the rights of the judgment creditor, and if Sayles & Bassetts enforced the payment of the judgment a second time, it certainly cannot be contended that their clients were entitled to have their judgment paid twice. Nor was Heiskell bound to pay it twice, yet he would have been bound on the original judgment to the appellees, they having been compelled by law to pay his judgment for him. It cannot be said they voluntarily made themselves his creditors.

But the appellants claim that they are improperly sued ; that if anybody is liable to the appellees it is Ennis & Co. ; and that they are improperly joined in the action against them. This is not a case in which the maxim *respondeat superior* can be made to apply. If A, improperly and without authority from B, collect money from C which belongs to B, A will hold the money as trustee for B, and he may be sued by B.

It was not necessary to join Ennis & Co. in this suit, but certainly Sayles & Bassetts have no right to complain of the misjoinder, and if the judgment is against all the defendants below, it is not an error on account of which we would set it aside ; and it is perhaps unnecessary that we should give any reason for this view of the case further than to remark, that both Ennis & Co. and Sayles & Bassetts must have known that they had no right to a double payment of the judgment.

We need not discuss the question of jurisdiction ; the parties have sufficiently blended themselves in this transaction to give the District Court jurisdiction in the county of either's residence.

The judgment of the District Court is affirmed.

Affirmed.